IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SUSAN M. RENTZELL, | ) | |
| | ) | |
| Plaintiff, | ) | 4:17CV3037 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM** |
| NANCY A. BERRYHILL, Acting | ) | **AND ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |

Plaintiff brings this action under Titles II and XVI of the Social Security Act ("Act"), which provides for judicial review of "final decisions" of the Commissioner of the Social Security Administration. 42 U.S.C. § 405(g) (Westlaw 2018).

## I.  NATURE OF ACTION & PRIOR PROCEEDINGS

### A.    Procedural Background

Plaintiff filed an application for disability benefits on January 24, 2014, under Title II (Filing No. 12-5 at CM/ECF pp. 238-239) and Title XVI (Filing No. 12-5 at CM/ECF pp. 240-245). The claims were denied initially (Filing No. 12-4 at CM/ECF pp. 159-162, 163-166) and on reconsideration. (Filing No. 12-4 at CM/ECF pp. 169-177, 178-186.) On November 23, 2015, following a hearing, an administrative law judge ("ALJ") found that Plaintiff was not under a "disability" as defined in the Act. (Filing No. 12-2 at CM/ECF pp. 14-23.) On January 12, 2017, the Appeals Council of the Social Security Administration denied Plaintiff's request for review. (Filing No. 12-2 at CM/ECF pp. 1-6.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *Sims v. Apfel*, 530 U.S. 103, 107 (2000) ("if . . . the Council denies the request for review, the ALJ's opinion becomes the final decision").

**B.**     **Factual Background**

The Defendant "concurs" with the statement of facts in Plaintiff's brief, which is set forth verbatim below:

In her application for disability benefits, plaintiff stated that she was born on October 11, 1969,[1] and that she became unable to work on February 28, 2007 (Filing No. 12-5, at CM/ECF p. 238), which was amended at her hearing to July 23, 2008 (Filing No. 12-2, at CM/ECF p. 45). The plaintiff testified that she has worked part-time as a home health provider. (Filing No. 12-2, at CM/ECF p. 45). She has performed no substantial and gainful work activity since the date of her alleged onset of disability, July 23, 2008. (Filing No. 12-2, at CM/ECF p. 19).

At her hearing the plaintiff stated that he completed high school for her level of education. (Filing No. 12-2, at CM/ECF p. 46).

The ALJ determined at plaintiff's hearing that she has no past relevant work. (Filing No. 12-2, at CM/ECF p. 26).

The plaintiff alleged that she could not work because of her impairments. She complained of chronic lower back pain with pinching in the legs and tingling in the toes. She said that it feels like someone is twisting and breaking her lower spine. She indicated that she develops these symptoms while bending and lifting but feels better while lying down. She noted that once she takes her medicine, these symptoms settle down in about an hour. (Filing No. 12-6, at CM/ECF p. 281). However, she contended that she experiences medication side effects, including drowsiness. (Filing No. 12-6, at CM/ECF p. 282). Due to pain, she alleged that she could stand for one hour, walk for one hour, and sit for six hours in an eight-hour day. (Filing No. 12-7, at CM/ECF p. 348). In all, she contended that she could not work due to physical limitations. (Filing No. 12-7, at CM/ECF p. 344).

---

[1]Making the plaintiff 38 years old as of the date that her disability began or a younger individual. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.00(h)(1).

The plaintiff has a history of spine disorders. Medical treatment has included narcotic pain management, physical therapy, and lumbar facet injections. In addition, she underwent a left sided LS-Sl hemilaminectomy and discectomy in 2003 and right sided LS-Sl hemilaminectomy and partial discectomy in February 2007. Since the alleged onset date, however, the plaintiff has maintained an ability to perform a reduced range of light work. (Filing No. 13-1, at CM/ECF p. 502).

Through the end of 2007, treatment records show continued problems with her lower back, although less reporting due to upper respiratory infection following surgical intervention. (Filing No. 13-7, at CM/ECF p. 730-731). In February 2008, she again was focused on the continued back pain and she was prescribed Soma. (Filing No. 13-7, at CM/ECF p. 729). By May 2008 she described some increasing lower back pain with radiation into the lower extremities and received medications including narcotics (Ultram, Vicodin and Soma). (Filing No. 13-7, at CM/ECF p. 728).

In June 2008, the plaintiff went to the emergency room (ER) after "wrenching her back." The record indicates that she was well known to attending physicians. She was tearful but sat in a chair in no acute distress. Her symptoms improved with Toradol and Nubian. She received Ultram and Soma to take home. (Filing No. 12-10, at CM/ECF p. 469).

In September 2008, the plaintiff visited primary care. She said that she was not feeling well. She weighed 231 pounds. She had a normal neurologic examination. She displayed grossly intact cranial nerves. She had normal strength in the upper and lower extremities. Her gait was still steady without assistance. Her deep tendon reflexes were normal and that she was still taking her Ultram, Vicodin and Soma as prescribed. (Filing No. 13-6, at CM/ECF p. 725-726).

In January 2009 plaintiff called her primary care clinic complaining of terrible back pain and reporting that Vicodin had stopped helping and that she had discontinued it. She did get a prescription for Soma. In March 2009, the plaintiff presented with lower back and leg

pain. As before, she demonstrated a steady gait without assistance. She had some right sciatic tenderness in the lumbar spine but was able to flex forward to the knees. She preserved full strength in the lower extremities bilaterally. Deep tendon reflexes were trace in the knees. She had a positive straight leg raise test on the right. There was no definite cause for her lumbar symptoms, as her spine seemed unremarkable and the plaintiff was referred to Dr. Mahalek. (Filing No. 13-6, at CM/ECF p. 723).

[On] March 16, 2009, Plaintiff consulted James M. Mahalek, M.D., and reported lower extremity pain with her symptoms getting worse after the middle of the previous year without any specific precipitating event or injury. She underwent two epidural steroid injections which minimally improved her symptoms. It was after that her symptoms began to aggressively worsen. She describes the quality of her pain as a burning sensation with severity being rated as a 7-8/10 when it is at its worst. Four views of her lumbar spine with flexion and extension views done here today reveal advanced degenerative disc disease with disc collapse at L5-S1. Four views of her lumbar spine with flexion and extension views done here today reveal advanced degenerative disc disease with disc collapse at L5-S1 and an MRI was ordered. (Filing No. 13-1, at CM/ECF p. 502-503).

Plaintiff followed up with Dr. Mahalek March 24, 2009, after the MRI. She was found to be tender over the right SI joint and the MRI showed lumbar degenerative disc disease and SI joint dysfunction. While Dr. Mahalek could not find a definitive cause for her symptoms, he felt that it may be from the SI joint dysfunction and referred her back to her primary care provider to talk about a weaning schedule for her medications. (Filing No. 13-1, at CM/ECF p. 501).

In May 2010, the plaintiff went to the ER with neck pain. She demonstrated normal strength in the extremities bilaterally. She exhibited a normal gait without any assistance. Her symptoms improved with Medrol, Dosepak, and Skelaxin. (Filing No. 12-9, at CM/ECF p. 451- 452).

Throughout 2012, the plaintiff continued to treat with medication management and emergency medical services. (Filing No. 12-9, at

CM/ECF p. 432-442). She also attended physical therapy in April 2012. She was very emotional and guarded to range of motion testing. Her mother indicated that the plaintiff had a "low tolerance" to pain and got very anxious with pain. She was educated on a home exercise program. Her rehabilitation potential was fair to good. However, she did not return to formal physical therapy until the following year. (Filing No. 12-8, at CM/ECF p. 358-361).

In May 2013, the plaintiff returned to Dr. Mahalek. She demonstrated normal range of motion in the hips. She had some tenderness over the sciatic notch and over the PSIS. Radiographs revealed severe DDD and disc collapse at L5-S1 and moderate degenerative changes at L4-L5. She was still able to flex forward, bringing the fingertips to the ankles. She received another prescription for physical therapy. (Filing No. 13-1, at CM/ECF p. 493-496).

Later in the month, the plaintiff attended a physical therapy evaluation. Objective findings included tenderness to palpation in the lumbar spine and a positive straight leg raise test. In all, she demonstrated a good potential for rehabilitation with skilled therapy. (Filing No. 12-8, at CM/ECF p. 358).

Also in May 2013, the plaintiff went to the ER for back pain. The record questions narcotic abuse or addiction. Originally, she complained of numbness in the right leg. Later on, she stated that she was having pain in that leg from the hip to her toes. She displayed no points of tenderness. Straight leg raises were negative bilaterally. Distal pulses were good. There was no evidence of focal weakness in the lower extremities. Sensation was intact. Her prognosis was poor due to her unusual interpretation of pain. (Filing No. 12-8, at CM/ECF p. 430-431). Twice more through the end of 2013, she continued to seek and receive narcotic pain medication from emergency medical providers. (Filing No. 12-8, at CM/ECF p. 428-430).

In October 2013, the plaintiff presented to Heartland Family Medicine two times with back pain first and then cramping. Dr. Knackstedt gave her a prescription of Tramadol and Medrol Dosepack for her back pain. Later in the month, Dr. Michael L. Durr was reluctant to prescribe anything stronger than Ultram, but she received a Toradol shot. (Filing No. 13-6, at CM/ECF p. 689-691).

In January 2014, the plaintiff returned to Dr. Mahalek with lower back pain. A MRI from December 2013 was essentially benign. There was evidence of moderate DDD at L5-S1, foraminal narrowing in the lumbar spine, most pronounced at L5-S1, and mild lower lumbar facet arthropathy. The treatment plan was conservative. Surgery was a last result. She received a referral to pain management for a consultation. (Filing No. 13-1, at CM/ECF p. 508-511).

In March 2014, the plaintiff initiated care for pain management [with] Dr. Burt J. McKeag, M.D. She complained of lower back pain with radiation into both legs. She had an obese BMI of 38.5. Yet, she demonstrated an active range of motion. Her flexion was asymptomatic and extension was full. She exhibited normal muscle strength and sensation. Her straight leg raises were negative bilaterally. She maintained full range of motion in the hips, thighs, ankles, and feet bilaterally. She received a prescription for lumbar facet injections. (Filing No. 13-8, at CM/ECF p. 850-852).

In April 2014, the plaintiff received a lumbar facet injection from Dr. McKeag. She was obese but maintained a coordinated gait. She described good relief immediately after the injection. She displayed full range of motion of the hips, ankles, foot with mild tenderness midline at L3 and moderate at L4 and L5. Muscle strength, sensation, and reflexes were normal. She had a negative straight leg raise test. She received clearance to undergo exercise testing or participate in an exercise program. (Filing No. 13-8, at CM/ECF p. 853-855).

On May 12, 2014, the plaintiff . . . again returned to Dr. McKeag complaining of bilateral lumbar pain radiating down the back of both of her legs which she described as pinching and sharp. She told the doctor that she did not feel that her hydrocodone was helping. Dr. McKeag started the plaintiff on a 30[-]day run with OxyContin. (Filing No. 13-8, at CM/ECF p. 838-839).

In June 2014, the plaintiff returned to discuss a spinal cord stimulator trial. She reported adequate pain relief with medication management but wanted to find something that would allow her to get off narcotic pain medication. She said that she tried a TENS unit but did not find it helpful. On examination, she demonstrated a coordinated gait

with intact cranial nerves, motor strength, sensation, and reflexes. A drug screen was consistent with prescribed medication. The treatment plan included physical therapy and then, stimulator therapy if there was no response to physical therapy. (Filing No. 13-8, at CM/ECF p. 835-837).

In July of 2014 after another visit with the plaintiff, Dr. McKeag decided that it was best for the plaintiff to stop taking pain medications. He felt that this could be accomplished under the supervision of her primary care doctor. (Filing No. 13-8, at CM/ECF p. 864).

In the end of 2014, the plaintiff sought additional evaluation of pain and neuropathy. An updated MRI revealed no new abnormality in the lumbar spine. There was mild spondylosis at L5-S1 with mild posterior subluxation of L5 over S1, likely related to DDD. Radiographs confirmed no acute abnormalities of the sacrum and coccyx. There was anatomic alignment with preserved soft tissue. SI joints were unremarkable. Likewise, x-rays of the left knee found no acute abnormalities. (Filing No. 13-8, at CM/ECF p. 865-869).

The plaintiff returned to Dr. Knackstedt on April 30, 2015 again complaining of low back pain shooting into her legs. She reported that she had stopped her [T]ramadol because it did nothing for her and that she stopped her [L]ortab because of a fear of addiction. The doctor prescribed [O]xycotin and a course of physical therapy. (Filing No. 13-9, at CM/ECF p. 880-883).

In July 2015, the plaintiff went to family care. She denied musculoskeletal and neurologic symptoms. She said that she wanted weight loss surgery but was denied by her insurance. She had a generally unremarkable physical examination. Her musculoskeletal findings were normal. She had normal cranial nerves. There was no evidence of sensory abnormalities. She displayed a normal gait and stance. Her deep tendon reflexes were normal (Filing No. 13-9, at CM/ECF p. 893-897).

As for the medical opinion evidence, the State Agency medical consultants at the initial and reconsideration levels without the benefit of following the care and treatment the plaintiff received from the time of the filing the claim through her hearing opined that the plaintiff could perform light work. They added that she could stand/walk and sit for about six hours each in an eight-hour workday. They found that she

could occasionally or frequently engage in postural activities but must avoid concentrated exposure to vibration and hazards. (Filing No. 12-3, at CM/ECF p. 108-110, 137-141).

Cameron D. Knackstedt, D.O., opined that the plaintiff could occasionally engage in postural activities but never climb ladders. In addition, Dr. Knackstedt opined that the plaintiff could sit and stand/walk for less than two hours each in an eight-hour workday. He found that she could lift and carry up to 10 pounds. In all, he noted that she would miss more than four days per month due to her impairments or treatment. Further, Dr. Knackstedt felt that the plaintiff would constantly have pain sufficient to interfere with her attention and concentration needed to perform even simple tasks; would require the need to change positions from sitting, standing and walking at will; and would need unscheduled breaks hourly of 10 minutes. (Filing No. 13-9, at CM/ECF p. 899-903).

(Filing No. 20 at CM/ECF pp. 2-10.)

## C.    The ALJ's Opinion

Following the five-step sequential analysis for determining whether an individual is "disabled" under the Social Security Act, 20 C.F.R. § 404.1520, the ALJ concluded in relevant part:

(1)    Plaintiff has not engaged in substantial gainful activity since July 23, 2008, the amended alleged onset date.

(2)    Plaintiff's severe impairments of lumbar degenerative disc disease and obesity did not meet or equal the severity of one of the listed impairments under the Act.

(3)    Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except Plaintiff can stand for six hours and sit for six hours in an eight-hour work day, with normal breaks

and an opportunity to change position. She can complete an eight-hour workday; can bend and stoop occasionally; cannot climb ladders; and must avoid exposure to concentrated vibration and hazards, such as heights and open machinery.

(4)  Plaintiff has no past relevant work resulting in earnings at "substantial gainful activity" levels in the past 15 years.

(5)  Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as a counter clerk, production-line solderer, and photo-machine operator, dictating a finding of "not disabled."

(Filing No. 12-2 at CM/ECF pp. 20-28.)

## II.  ISSUES ON APPEAL

Plaintiff asserts that the ALJ erred in (1) failing "to find that [P]laintiff's unrefuted status post low back surgery times two and foraminal narrowing in lumbar spine-most pronounced on the right as found by Dr. Knackstedt were severe impairments"; (2) failing "to give the opinions of Dr. Knackstedt the greatest weight based on his examining relationship, his treatment relationship (as to length of treatment, frequency of treatment and the nature of the treatment), the supportability of his opinions and the consistency with the record as a whole"; and (3) failing to properly apply *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), in "determining the credibility of the plaintiff's subjective allegations of [her] physical and mental condition as to [her] limitations, restrictions and work-like activity"—specifically, Plaintiff's complaints of pain. (Filing No. 20 at CM/ECF pp. 12-13.)

## III.  STANDARD OF REVIEW

The court may reverse the Commissioner's findings only if they are not

supported by substantial evidence or result from an error of law. *See Gann*, 864 F.3d at 950; *Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012); 42 U.S.C. §405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. In determining whether evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. If substantial evidence supports the Commissioner's conclusion, the court may not reverse merely because substantial evidence also supports the contrary outcome and even if the court would have reached a different conclusion. *Gann*, 864 F.3d at 950.

A court should disturb the ALJ's decision only if it falls outside the available "zone of choice," and a decision is not outside that zone of choice simply because the court may have reached a different conclusion had the court been the fact-finder in the first instance. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011); *see also McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome"). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

## IV. DISCUSSION

### A.  Failure to Classify Post-Surgery Status & Foraminal Narrowing as Severe Impairments

Plaintiff first argues that the ALJ erred in not classifying Plaintiff's "status post low back surgery times two and foraminal narrowing in lumbar spine-most

pronounced on the right" as a "severe impairments." Plaintiff asserts that long after her "ineffective" back surgeries in 2003 and 2007, her low-back problems have persisted and have required her to seek "care from her primary care provider to ER care to orthopedic care to pain management." Plaintiff argues that these conditions—if they had been properly classified as severe impairments—"would require limitations on the function of plaintiff," and such limitations "should have been included in the RFC of the VE." (Filing No. 20 at CM/ECF p. 16.) Plaintiff requests a remand so these impairments can be properly classified and included in Plaintiff's RFC. This argument fails for several reasons.

First, and with regard to Plaintiff's surgery argument, Plaintiff cites no cases establishing that surgery alone is a severe impairment. Counsel himself even refers to Plaintiff's surgeries as "treatment." (Filing No. 20 at CM/ECF p. 16.) *See* 20 C.F.R. § 404.1521 ("Your impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."); *Dethlefs v. Colvin*, No. 7:14CV5005, 2015 WL 2381598, at *6 (D. Neb. May 19, 2015) (describing surgery as treatment for impairment); *Lopez v. Colvin*, No. 4:13-00067, 2014 WL 12586111, at *4 (W.D. Mo. Mar. 24, 2014) (describing surgery as a treatment modality); *Monier v. Apfel*, 22 F. Supp. 2d 1035, 1056 (E.D. Mo. 1998) (describing surgery as remedy for impairments). Further, Plaintiff only argues that her surgeries were "ineffective," not that the surgeries themselves significantly limited one or more basic work activities such that the surgeries could be considered a "severe impairment" for purposes of the Social Security Act. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006) (in order to have a severe impairment, Step Two of the five-step sequential analysis requires claimant to "prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities").

Second, even though the ALJ did not designate Plaintiff's two surgeries and the foraminal narrowing in her lumbar spine to be severe impairments in and of themselves, the ALJ nevertheless expressly considered those conditions in arriving at

Plaintiff's RFC. (Filing No. 12-2 at CM/ECF pp. 22-26 ("she underwent a left sided LS-Sl hemilaminectomy and discectomy in 2003 and right sided LS-Sl hemilaminectomy and partial discectomy in February 2007"; "surgical intervention"; "There was evidence of moderate DDD at LS-Sl, foraminal narrowing in the lumbar spine, most pronounced at LS-Sl"; "She has a long history of treatment for lumbar DDD, including surgery"). *Martise v. Astrue*, 641 F.3d 909, 924 (8th Cir. 2011) (finding no merit to claimant's argument that ALJ failed to consider all of her impairments because ALJ properly considered combined effects of claimant's impairments when ALJ summarized claimant's medical records and discussed each of claimant's alleged impairments).

Third, even if the ALJ's failure to classify Plaintiff's two surgeries and the foraminal narrowing in her lumbar spine as severe impairments could be construed as error, Plaintiff's counsel does not discuss how such conditions—had they been considered "severe impairments" at Step Two—limited Plaintiff's ability to engage in work activity, how Plaintiff's RFC would have been altered, and why the ALJ would have reached a different decision. *Byes*, 687 F.3d at 917 (to show the ALJ's error was not harmless, claimant must "provide some indication that the ALJ would have decided differently if the error had not occurred"); *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) ("There is no indication that the ALJ would have decided differently . . . and any error by the ALJ was therefore harmless.")[2]; *Hoosman, on*

_____

[2]As evidenced by the *Byes* and *Van Vickle* cases, the Eighth Circuit Court of Appeals has used harmless-error analysis in the context of Social Security appeals. However, it has not adopted a specific, express rule providing that when an ALJ does not find diagnosed conditions to be severe impairments, it is not reversible error "if the ALJ finds the claimant to suffer from another severe impairment, continues in the evaluation process, and considers the effects of the impairment at the other steps of the evaluation process," *Hoosman, on behalf of C.W. v. Colvin*, No. 16-CV-0202, 2017 WL 627222, at *4 (N.D. Iowa Feb. 15, 2017), *report and recommendation adopted sub nom. Hoosman on behalf of C.W. v. Berryhill*, No. C16-2028, 2017 WL 1095059 (N.D. Iowa Mar. 23, 2017) (internal quotation and citation omitted), as have some district courts in this circuit and other circuit courts of appeal. *Winn v. Comm'r*

*behalf of C.W. v. Colvin*, No. 16-CV-0202, 2017 WL 627222, at \*4 (N.D. Iowa Feb. 15, 2017), *report and recommendation adopted sub nom. Hoosman on behalf of C.W.*

---

*of Soc. Sec.*, 615 F. App'x 315, 326 (6th Cir. 2015) (as long as ALJ meaningfully considers in Step Four impairments not classified as severe at Step Two, "[a]n ALJ's failure to find a severe impairment where one exists may not constitute reversible error where the ALJ determines that a claimant has at least one other severe impairment and continues with the remaining steps of the disability evaluation"); *Grober v. Astrue*, 415 F. App'x 65, 67 (10th Cir. 2011) ("An error at step two concerning the severity of a particular impairment is usually harmless when the ALJ, as here, finds another impairment is severe and proceeds to the remaining steps of the evaluation."); *Hoosman, 2017 WL 627222*, at \*4 (any error in omitting claimant's additional alleged severe impairments at Step Two was harmless because Step Two was resolved in favor of claimant); *Berry v. Colvin*, 74 F. Supp. 3d 994, 1001 (N.D. Iowa 2015) (accepting Commissioner's argument that failure to find a particular impairment severe at Step Two is not reversible error if ALJ finds at least one other impairment to be severe; "so long as the ALJ does not terminate the sequential evaluation process at Step Two, there is little basis to argue that the characterization of one impairment as 'non-severe' constitutes reversible error"); *Harper v. Colvin*, No. 1:14 CV 31, 2015 WL 5567978, at \*6 (E.D. Mo. Sept. 22, 2015) ("A failure to find severe impairments at Step 2 may be harmless where the ALJ continues with the sequential evaluation process and considers all impairments, both severe and non-severe."); *Johnson v. Comm'r of Soc. Sec.*, No. CIV. 11-1268, 2012 WL 4328413, at \*21 (D. Minn. July 11, 2012), *report and recommendation adopted*, No. CIV. 11-1268, 2012 WL 4328389 (D. Minn. Sept. 20, 2012)("the failure to find additional impairments at Step Two does not constitute reversible error when an ALJ considers all of a claimant's impairments in the remaining steps of a disability determination"); Carolyn A. Kubitschek & Jon C. Dubin, *Social Security Disability Law & Procedure in Federal Court* § 3:14 (Apr. 2018) ("As long as the ALJ determines the claimant has one severe impairment at step two, the ALJ must proceed to the remaining steps of the evaluation process as the step two determination of severity is merely a threshold requirement. . . . Put another way, an ALJ's failure to find a severe impairment where one exists may not constitute reversible error where the ALJ determines that a claimant has at least one other severe impairment and properly continues with the remaining steps of the disability evaluation.") *But see Nicola v. Astrue*, 480 F.3d 885, 886-87 (8th Cir. 2007) (ALJ's failure to identify borderline intellectual functioning as severe was reversible error, even when the ALJ had identified several other severe impairments and completed the entire five-step analysis).

*v. Berryhill*, No. C16-2028, 2017 WL 1095059 (N.D. Iowa Mar. 23, 2017) (Plaintiff failed to meet burden to show that any error at Step Two was not harmless by "providing some indication that the ALJ would have decided the case differently had the error not occurred"); *Johnson v. Comm'r of Soc. Sec.*, No. CIV. 11-1268, 2012 WL 4328413, at *17 (D. Minn. July 11, 2012), *report and recommendation adopted*, No. CIV. 11-1268, 2012 WL 4328389 (D. Minn. Sept. 20, 2012) (claimant waived argument that ALJ erred by failing to consider severity of some of his impairments at Step Two because counsel did not describe how such conditions limited his ability to engage in work activity, did not specify which listing the conditions met or equaled, and simply asserted that it was "obvious" that such impairments reduced his ability to do physical work on a full-time, competitive basis).

## B.      Failure to Give Dr. Knackstedt's Opinions Greatest Weight

Plaintiff next argues that the ALJ erred in failing "to give the opinions of Dr. Knackstedt the greatest weight based on his examining relationship, his treatment relationship (as to length of treatment, frequency of treatment and the nature of the treatment), the supportability of his opinions and the consistency with the record as a whole." (Filing No. 20 at CM/ECF p. 12.)

An ALJ will give a treating physician's opinion controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence. *Myers v. Colvin*, 721 F.3d 521, 525 (8th Cir. 2013); *House v. Astrue*, 500 F.3d 741, 744 (8th Cir. 2007); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ should weigh treating physician opinions using factors such as the nature and extent of treatment; the degree to which relevant evidence supports the physician's opinion; consistency between the opinion and the record as a whole; whether the physician is a specialist in the area in which the opinion is based; and other factors that support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ is free to reject the opinion of any physician when it is unsupported in the physician's own treatment notes or other

evidence of record. *Myers*, 721 F.3d at 525; *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007); *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). "Whether granting 'a treating physician's opinion substantial or little weight,' *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000), the commissioner must 'always give good reasons . . . for the weight' she gives, 20 C.F.R. § 416.927(d)(2)." *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014).

On March 21, 2014, Dr. Knackstedt completed a lumbar-spine physical-capacity evaluation (Filing No. 13-1 at CM/ECF p. 58-62), opining that Plaintiff could sit and stand for one hour at a time; sit, stand, and/or walk for less than two hours in an eight-hour workday; and would need to walk for ten minutes every sixty minutes (Filing No. 13-1 at CM/ECF p. 60). Dr. Knackstedt believed that Plaintiff was limited to lifting and carrying less than ten pounds frequently, ten pounds occasionally, and twenty pounds rarely; she could occasionally twist, stoop (bend), crouch/squat, and climb stairs, but never climb ladders; and she would likely be absent from work more than four days per month (Filing No. 13-1 at CM/ECF p. 61). Finally, Dr. Knackstedt found that Plaintiff would require hourly, unscheduled breaks during an eight-hour workday (Filing No. 13-1 at CM/ECF p. 60).

The ALJ accorded Dr. Knackstedt's opinion "partial" weight (Filing No. 12-2 at CM/ECF p. 26) because the significant limitations Dr. Knackstedt assessed were inconsistent with the record as a whole. Specifically, the ALJ rejected portions of Dr. Knackstedt's opinions because he "did not provide an explanation" for his assessment that Plaintiff would need to miss at least four days each month due to her impairment, "the claimant admitted that she could sit for six hours in an eight-hour day," and Plaintiff acknowledged that she performed "various household chores and yard work throughout a typical day." (Filing No. 12-2 at CM/ECF p. 26.) The ALJ concluded that because "the record identifie[d] good lumbar range of motion with intact muscle strength and sensation in the lower extremities," the evidence as a whole supported "lesser exertional restrictions" than Dr. Knackstedt proposed. (Filing No. 12-2 at CM/ECF p. 26.)

Plaintiff complains that the ALJ did not adopt Dr. Knackstedt's opinion that Plaintiff could only sit for two hours in an eight-hour workday because Plaintiff stated at her hearing that she spends only "a couple hours" a day "sitting or reclining" on her sofa. (Filing No. 12-2 at CM/ECF p. 64). Plaintiff also asserts that the ALJ erred in failing to adopt Dr. Knackstedt's opinion that Plaintiff would need to miss at least four workdays each month due to her impairment. I conclude that the ALJ gave "good reasons" for giving Dr. Knackstedt's physical-capacity evaluation partial weight, particularly with regard to his sitting and work-absence opinions. *Prosch*, 201 F.3d at 1013 (whether granting treating physician's opinion substantial or little weight, ALJ must give "good reasons" for weight given). The ALJ's decision to give Dr. Knackstedt's opinions partial weight is supported by the following evidence:

• Plaintiff's own testimony about her ability to perform a substantial amount of activities belies her argument that the ALJ should have given greater weight to Dr. Knackstedt's physical-capacity evaluation. Plaintiff testified about her wide range of regular activities, such as moving boxes ranging from five to twenty-five pounds once a week; helping her mother for four hours daily, including driving her downtown, getting groceries, paying bills, washing clothes, and "helping her with her apartment"; lifting up to fifteen pounds without "causing [herself] problems"; being able to stand for two hours at a time to dust, do dishes, vacuum, make beds, clean the bathroom, clean the refrigerator, or get her mail, with a daily total of five hours "accomplishing chores around the house"; gardening for fifteen minutes at a time; attending and helping with weekly church activities, including food preparation; and walking for five hours per day, including thirty to sixty minutes of walking "for exercise." (Filing No. 12-2 at CM/ECF pp. 54-56, 58-59, 62-63, 65-67, 73-74.) This alone justified the ALJ's decision to give only "partial weight" to Dr. Knackstedt's restrictive physical-capacity evaluation. *Goff v. Barnhart*, 421 F.3d 785, 790-91 (8th Cir. 2005) (ALJ properly discounted opinion of long-term treating physician solely because his RFC assessment was inconsistent with claimant's "substantial, indeed compelling" testimony that she worked

five-hour shifts three to four times per week as a kitchen helper which required claimant to stand for two hours at a time, stack dishes, and lift sacks of potatoes and ice buckets; finding it unnecessary to address internal inconsistency of treating physician's opinions because "an appropriate finding of inconsistency with other evidence alone is sufficient to discount the opinion"); *Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014) (ALJ properly discounted treating physician's opinion about claimant's limitations because claimant's "admitted activities suggest she is capable of doing more than [her treating physician] indicated"); *Juszczyk v. Astrue*, 542 F.3d 626, 633 (8th Cir. 2008) (in determining RFC, ALJ was entitled to consider evidence as a whole and determine that plaintiff's alleged impairments were of the severity described by psychologist, rather than by plaintiff himself).

• The ALJ correctly stated that "the claimant admitted that she could sit for six hours in an eight-hour day." Only ten months before the ALJ issued his decision, Plaintiff admitted in SSA interrogatories that she could sit for six hours in an eight-hour day. (Filing No. 12-7 at CM/ECF p. 31 (SSA interrogatories dated Jan. 16, 2015).) In addition, two state-agency physicians who reviewed Plaintiff's extensive medical and work records opined that Plaintiff could sit, with normal breaks, for six hours in an eight-hour workday. (Filing No. 12-3 at CM/ECF pp. 4-17 (Apr. 7, 2014, Disability Determination by Dr. Jerry Reed); Filing No. 12-3 at CM/ECF pp. 48-60 (May 1, 2014, Disability Determination by Dr. Arthur Weaver).) SSR 96-6P, 1996 WL 374180 (July 2, 1996) (state agency medical consultants are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act," and ALJs are required to consider their findings of fact about the nature and severity of an individual's impairment as opinions of nonexamining physicians; while ALJ is not bound by such findings, they may not ignore them); 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record.")

• The ALJ correctly stated that Dr. Knackstedt gave no explanation for his opinion that Plaintiff would miss more than four workdays per month due to her impairment. Rather, Dr. Knackstedt simply checked "More than four days per month" on a form, with no further explanation, in response to a question asking him to "estimate, on the average, how many days per month your patient is likely to be absent from work as a result of the impairments or treatment. (Filing No. 13-1 at CM/ECF p. 61 (Mar. 21, 2014, Lumbar Spine Physical Capacity Evaluation).)[3] Dr. Knackstedt's "checked-box" evaluation contrasts with the thorough reports of the agency physicians who reviewed Plaintiff's medical and work records. *See Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (treating physician's residual functional capacity assessments possessed "little evidentiary value" when the assessments "consist[ed] of nothing more than vague, conclusory statements—checked boxes, circled answers, and brief fill-in-the-blank responses") (internal quotation and citation omitted); *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000) (ALJ properly exercised his discretion in favoring thorough reports of agency-funded, one-time consultants over the contrary check-box report of treating physician); Filing No. 12-3 at CM/ECF p. 39 (Findings of Fact and Analysis of Evidence by Dr. Arthur Weaver); Filing No. 12-3 at CM/ECF pp. 8-10 (Findings of Fact and Analysis of Evidence by Dr. Jerry Reed).

• The medical evidence as a whole illustrates Plaintiff's history of treatment for DDD, including surgery, medications, and injections. However, the objective medical findings indicate good range of motion of Plaintiff's lumbar spine with good muscle strength and normal sensation and gait, supporting the ALJ's decision to adopt lesser exertional restrictions than Dr. Knackstedt proposed.

---

[3]The Medical Records Index for this case (Filing No. 12-1 at CM/ECF pp. 1-3) indicates that Exhibit 15F (Filing No. 13-9 at CM/ECF pp. 31-35) is a March 21, 2015, Medical Assessment Physical Ability-Work Related Activities by Dr. Knackstedt. However, that exhibit is another copy of the doctor's March 21, 2014, Lumbar Spine Physical Capacity Evaluation.

(Filing No. 13-8 at CM/ECF p. 54 (on Dec. 16, 2013, MRI of lumbar spine showed moderate L5-S1 degenerative disc disease, moderate foraminal narrowing in lower lumbar spine, mild lower facet arthropathy), p. 59 (moderate low-back pain with normal muscle strength, reflexes, and sensation in back on Mar. 7, 2014), p. 63 (on April 7, 2014, radiating low-back pain, lumbar facet injection with "good relief immediately after," normal gait), pp. 71-72 (on July 23, 2014, low-back pain with "well coordinated gait," Plaintiff able to "undergo exercise testing and/or participate in exercise program; advising Plaintiff to "stop taking pain medications"); Filing No. 13-9 at CM/ECF p. 2 (no gait instability or back pain on July 30, 2014), p. 3 (radiating back pain and tenderness in lower back, but no gait instability and no acute distress on Aug. 6, 2014), p. 9 ("normal" musculoskeletal findings, gait, and sensation on Apr. 3, 2015), p. 14 (musculoskeletal findings "normal," lower back nontender, normal gait and sensation on Apr. 30, 2015, yet Dr. Knackstedt refers Plaintiff to physical therapy and prescribes oxycontin), p. 19 (back pain, but normal gait and sensation on May 29, 2015), p. 28 (normal back, sensation, and gait on July 24, 2015).)

Because this court must "defer heavily to the findings and conclusions" of the Social Security Administration, *Hurd*, 621 F.3d at 738, and because the above-described evidence supports the ALJ's decision to give Dr. Knackstedt's opinions partial weight, *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005) (ALJ must assess claimant's RFC based on all relevant evidence), I am not persuaded by Plaintiff's argument otherwise. *Prosch*, 201 F.3d at 1013 (a treating physician's opinion does not "automatically control, since the record must be evaluated as a whole") (quotations and citation omitted).

## C.     Plaintiff's Allegations of Pain

Plaintiff argues that the ALJ's finding that Plaintiff is not disabled was not based on substantial evidence because it was not based on an RFC which incorporated

"plaintiff's relevant complaints of pain." (Filing No. 20 at CM/ECF p. 22.) "Subjective allegations of pain may be discounted by the ALJ if the evidence as a whole is inconsistent with the claimant's testimony." *Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015). Because an "ALJ is in a better position to evaluate credibility," the court will "defer to [the ALJ's] determinations" when "they are supported by sufficient reasons and substantial evidence on the record as a whole." *Andrews*, 791 F.3d at 929.

Social Security Ruling ("SSR") 16-3p[4] states that in "considering the intensity, persistence, and limiting effects of an individual's symptoms," the ALJ must consider "the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, 2016 WL 1119029, Titles II & XVI: Evaluation of Symptoms in Disability Claims (S.S.A. Mar. 16, 2016). With regard to an individual's statements about their symptoms, such as pain, the ALJ must "evaluate whether the statements are consistent with objective medical evidence and the other evidence." *Id.* If a claimant's statements are inconsistent with objective medical evidence, the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively . . . ." *Id.*

Here, substantial evidence supports the ALJ's conclusion that Plaintiff's self-reported symptoms were "not generally credible." (Filing No. 12-2 at CM/ECF p. 25.)

_____

[4]SSR 16-3p became effective on March 28, 2016, and it supersedes SSR 96-7p. With this change, the SSA "eliminat[ed] the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation." SSR 16-3p, 2016 WL 1119029, Titles II & XVI: Evaluation of Symptoms in Disability Claims (S.S.A. Mar. 16, 2016).

As discussed in detail in section IV(B) of this Memorandum and Order, the ALJ found that the objective medical findings in the record, as well as Plaintiff's activities of daily living, were inconsistent with Plaintiff's alleged pain being completely disabling. The ALJ's conclusion is fully supported by Plaintiff's own testimony about her ability to perform a substantial amount of activities and the medical evidence as a whole, which illustrates Plaintiff's long history of treatment for DDD, but also includes objective medical findings indicating good range of motion of Plaintiff's lumbar spine with good muscle strength and normal sensation and gait, necessitating lesser exertional restrictions than Plaintiff's treating physician proposed. Further, the parties have not cited any medical assessments in the record supporting Plaintiff's allegations of total disability.

Because the ALJ's evaluation of Plaintiff's subjective complaints of pain was based on the entire record; reflects consideration of the appropriate factors; explains reasons for finding Plaintiff's alleged level of pain to be inconsistent with other evidence in the record; and is supported by substantial evidence, I find no merit in Plaintiff's argument that the ALJ did not incorporate all of Plaintiff's pain allegations in making his RFC determination. *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012) (court will defer to ALJ's judgment when ALJ discredits claimant's credibility and gives good reason for doing so); *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) (district court properly discredited claimant's complaints of disabling pain and physical impairments when ALJ identified and summarized claimant's complaints, described evidence of daily activities, identified inconsistencies between claimant's testimony and record evidence, and considered reports of both treating and consultative physicians; "If an ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."); *Medhaug v. Astrue*, 578 F.3d 805, 816-17 (8th Cir. 2009) (ALJ properly discredited claimant's testimony after considering his own statements and his physicians' opinions that his pain was controlled with medication; the fact that claimant maintained work after onset date; and claimant's daily activities and chores that were inconsistent with complaints of pain, such as cooking, vacuuming, washing

dishes, doing laundry, shopping, driving, and walking).

## V. CONCLUSION

For the reasons explained above, I find the ALJ's decision is supported by substantial evidence on the record as a whole and is not contrary to law. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (quotations and citations omitted) ("We must consider evidence that both supports and detracts from the ALJ's decision. . . . If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision."); *McNamara, 590 F.3d at 610* (if substantial evidence supports ALJ's decision, court may not reverse, even if "inconsistent conclusions may be drawn from the evidence"); *Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001)* (same).

IT IS ORDERED:

1.     Plaintiff's Motion for Order reversing the Commissioner's decision (Filing No. 17) is denied.

2.     Defendant's Motion to Affirm the Commissioner's Decision (Filing No. 23) is granted.

3.     The Commissioner's decision is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

4.     Judgment will be entered by separate document.

May 1, 2018                                    BY THE COURT:

                                                       s/ *Richard G. Kopf*
                                                       Senior United States District Judge